CERTIFICATION
CM/ECF DOCUMENT

I hereby attest and certify that this is a true
and correct printed copy of a document which
was electronically filed with the United States
District Court for the Northern District of
Georgia.

Date Filed: *January 22, 2014*

By: *Ronnie Smith Deputy Clerk*

23 JAN 2014

Clerk of Court

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ALOSTAR BANK OF COMMERCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| | ) | NO. 1:14-cv-00178-WSD |
| AIRNET HOLDINGS, INC., | ) | |
| AIRNET MANAGEMENT, INC., | ) | |
| AIRNET SYSTEMS, INC., | ) | |
| FLIGHT EXPRESS, INC., | ) | |
| FLIGHT EXPRESS SERVICE | ) | |
| CORP., and | ) | |
| FLIGHT ICE, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CONSENT ORDER APPOINTING RECEIVER AND
## ENJOINING DEFENDANTS AND OTHERS

THIS MATTER is before the Court on the Verified Complaint for Damages,
Appointment of a Receiver, and Injunctive Relief (the **"Complaint"**) and
accompanying Emergency Motion for Appointment of a Receiver and for
Injunctive Relief and Memorandum of Law in Support (the **"Motion"**) filed by
Plaintiff **ALOSTAR BANK OF COMMERCE** (**"Plaintiff"**). It appears that due
and sufficient notice of the Complaint and Motion have been given to Defendants
**AIRNET SYSTEMS, INC.** ("AirNet Systems"), **AIRNET MANAGEMENT,**

**ATTACHMENT B**

INC. ("AirNet Management"), FLIGHT EXPRESS, INC. ("Flight Express"),

FLIGHT ICE, INC. ("Flight Ice"), FLIGHT EXPRESS SERVICE CORP.

("Flight Express Service"), and AIRNET HOLDINGS, INC. ("Holdings";

together with AirNet Systems, AirNet Management, Flight Express, Flight Ice and

Flight Express Service, collectively, "Defendants" and each individually, a

"Defendant").   Having read and considered the Verified Complaint and Motion,

the arguments and statements of counsel having been presented and considered,

and it appearing that venue and jurisdiction are proper in this Court and the relief

requested is necessary to prevent irreparable harm and injury to Plaintiff's rights

and the Collateral (defined below) as to which Plaintiff has no adequate remedy at

law, the Court hereby makes the following findings of fact and conclusions of law:

### Findings of Fact

A.     Plaintiff has extended credit and other financial accommodations to or

for the benefit of Defendants pursuant to a certain Loan and Security Agreement

dated December 17, 2012 (as any time amended, modified, restated or

supplemented, the "Loan Agreement"), among Plaintiff and Defendants, and

related Loan Documents (defined below).   Pursuant to the Loan Agreement,

Plaintiff made loans to Defendants.   As of the close of business on January 17,

2014, the outstanding principal balance of loans in respect of which Defendants are

primarily liable totaled approximately $14,513,192 (together with all interest, fees, costs, attorney's fees and other charges payable by any Defendant in connection therewith, the **"Obligations"**).

B.   To secure the payment and performance of the Obligations, each Defendant granted to Plaintiff a security interest in and lien upon all or substantially all of such Defendant's real and personal property (collectively, as more particularly defined in the Loan Agreement, the **"Collateral"**) pursuant to, among other documents, (1) the Loan Agreement, (2) certain Trademark Security Agreements each dated December 17, 2012, between Plaintiff, on the one hand, AirNet Systems and AirNet Management, respectively, on the other hand (collectively, the **"Trademark Security Agreements"**), (3) a certain Copyright Security Agreement between Plaintiff and AirNet Management dated December 17, 2012 (the **"Copyright Security Agreement"**), (4) a certain Open-Ended Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the **"Leasehold Mortgage"**) executed by AirNet Systems in favor of Plaintiff dated December 17, 2012, (5) certain Aircraft Security Agreements each dated December 17, 2012, between Plaintiff, on the one hand, and AirNet Systems, Flight Express and Flight Express Service, respectively, on the other hand (collectively, the **"Aircraft Security Agreements"**), (6) certain Deposit

- 3 -

Account Control Agreements each dated December 17, 2012, among, respectively, (a) AirNet Systems, Flight Express, Plaintiff, and PNC Bank, National Association, and (b) AirNet Systems, Flight Express, Flight Express Service, Flight Ice, Plaintiff, and PNC Bank, National Association (collectively, the "**DACAs**").  The Loan Agreement, Trademark Security Agreements, Copyright Security Agreement, Leasehold Mortgage, Aircraft Security Agreements, DACAs and all related documents, instruments and agreements, as at any time amended, modified, restated or replaced, are hereinafter collectively referred to as the "**Loan Documents.**"

     C.     The Collateral consists of, among other things, the following:

          (1)     all of each Defendant's accounts; goods, including all inventory and equipment (including fixtures); instruments; chattel paper; documents (including bills of lading); general intangibles, including intellectual property, payment intangibles and software; deposit accounts; investment property (including all securities and securities accounts, but excluding any securities that constitute margin stock unless otherwise expressly provided in any Loan Document); all letter-of-credit rights; supporting obligations; commercial tort claims; monies now or at any time or times hereafter in the possession or under the control of Plaintiff; accessions to, substitutions for and replacements, products and cash and non-cash proceeds of any of the foregoing, including proceeds of and unearned premiums with respect to insurance policies insuring any of the Collateral and claims against any person for loss of, damage to or destruction of any of the Collateral; and books and records;

(2)   the aircrafts, airframes, engines, propellers, parts, spare parts (collectively, the **"Aircraft"**) and proceeds thereof owned by AirNet Systems, Flight Express and Flight Express Service; and

(3)   existing leases of real property to which any Defendant is a party, whether as lessor or lessee, and all extensions, renewals, modifications and proceeds thereof, including, without limitation, the interests of AirNet Systems under that certain land lease dated as of January 20, 2004, between AirNet Systems, as lessee, and Columbus Regional Airport Authority, the operator of Rickenbacker International Airport, as lessor (the **"Rickenbacker Lease"**).

D.   Plaintiff perfected its security interests in the Collateral by, among other things, (a) recording the Leasehold Mortgage and a UCC-1 Financing Statement (Fixture Filing) naming Plaintiff as secured party and AirNet Systems as Debtor on December 28, 2012, as Instrument Nos. 2012122801199962 and 201212280199964, respectively, in the Recorder's Office, Franklin County, Ohio; (b) recording Trademark Assignment notices with respect to the Trademark Security Agreements with the United States Patent and Trademark Office on December 18, 2012, at Reel 4921, Frame 0896, and on December 19, 2012, at Reel 4923, Reel 0296, respectively; (c) recording the Copyright Security Agreement with the United States Copyright Office; (d) recording UCC-1 Financing Statements naming Plaintiff as Secured Party and Flight Express, Flight Ice and Flight Express Service, respectively, as Debtors, in the Florida Secured Transactions Registry on December 13, 2012, bearing registry nos. 201208038476,

201208038484 and 201208038492; (e) recording a UCC-1 Financing Statement naming Plaintiff as Secured Party and Holdings as Debtor, with the Delaware Department of State on December 13, 2012, bearing Initial Filing No. 2012 4844371; (f) recording a UCC-1 Financing Statement naming Plaintiff as Secured Party and AirNet Management as Debtor, with the Ohio Secretary of State on December 13, 2012, bearing Document ID No. 201234800396; (g) recording a UCC-1 Financing Statement naming Plaintiff as Secured Party and AirNet Systems as Debtor, with the Ohio Secretary of State on December 13, 2012, bearing Document ID No. 201234800347; (h) recording the Aircraft Security Agreements and Irrevocable De-registration and Export Request Authorizations in the Federal Aviation Administration Civil Aircraft Registry; and (i) entering into the DACAs.

E.     By no later than June 6, 2013, Events of Default under (and as defined in) the Loan Agreement had occurred and continue to exist.

F.     The maturity of the Obligations has been accelerated, and Plaintiff has demanded payment of all Obligations from Defendants.

G.     Plaintiff is entitled to exercise all of the rights and remedies available to it under the Loan Documents and applicable law as a consequence of an Event of Default.

H.    Defendants' financial problems have intensified and accelerated to the point that there is imminent danger that Plaintiff's interests in the Collateral will be irreparably harmed, and an orderly wind-down and liquidation of Defendants' businesses is appropriate.

I.    In the absence of appointment of a receiver, the Collateral is in danger of immediate and irreparable damage or loss.

## Conclusions of Law

(i)    Venue and jurisdiction are proper in this Court.

(ii)    Plaintiff has no adequate remedy at law to prevent potential irreparable harm and injury to its rights under the Loan Documents and with respect to the Collateral, and therefore, Plaintiff is entitled to the relief prayed for in the Complaint and Motion as hereinafter provided.

(iii)    Adequate notice of the Motion and the relief requested by Plaintiff has been given to Defendants.

(iv)    In the Loan Agreement, Defendants consented to the relief granted in this Order; and through counsel (as indicated by the signature below of counsel for Defendants), Defendants have stipulated that they have notice of the relief sought by Plaintiff and do not oppose entry of this Order.

## Order of the Court

IT IS ACCORDINGLY HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.  The Motion is hereby GRANTED, as provided herein.

2.  Kevin O'Halloran be, and hereby is, appointed, without bond, to serve as receiver (in that office and capacity, the "**Receiver**") for Defendants and for all of the Receivership Assets (as defined below), all of which will form a part of the estate of Defendants that is in receivership (the "**Receivership Estate**"). As used herein, the term "**Receivership Assets**" shall be construed broadly to include all property of Defendants and interests in property of Defendants, whether real or personal, tangible or intangible and wherever located, including, without limitation, all Collateral and all of the types and items of property of Defendants described in paragraph 3 below. Except as otherwise provided herein with respect to actions that may be taken by Plaintiff, the Receiver shall be exclusively authorized to administer the Receivership Estate and to possess, manage, safeguard and dispose of the Receivership Assets, and no officer, director, shareholder, agent or employee of Defendants, nor any other person or entity claiming to have an ownership interest in or control over Defendants, shall have any authority or control over or with respect to the Receivership Estate or any of the Receivership Assets.

- 8 -

3.     Subject only to the rights and liens of Plaintiff, the Receiver shall have all powers and rights to administer and manage the Receivership Estate and to assume custody and control over all Receivership Assets, including, but not limited to, the following property, whether or not such property constitutes Collateral:

a.     all of any Defendant's interests as tenant under the Rickenbacker Lease and other leases of premises owned by any Defendant or any other person at which any Receivership Assets are located (but neither the Receiver nor the Receivership Estate shall be deemed to have assumed any of the obligations under any lease with any other person, but the use and occupancy of any such premises shall be conditioned upon the Receiver paying rent accruing hereafter in respect of any premises that are used for purposes beneficial to the Receivership Estate) and Defendants' interest in any leasehold improvements on any leased premises (all such business premises and improvements being collectively referred to as the "**Facilities**");

b.     all of Defendants' inventory, including, without limitation, aircraft parts, spare parts, accessories, appliances, airframes, engines, propellers, fuel, supplies and associated rights (collectively, the "**Inventory**");

c.      all items of machinery or equipment owned by Defendants, wherever located, or used by Defendants and located in, on or about the Facilities, including, without limitation, all Aircraft, aircraft parts, engines, propellers, motor vehicles, computer equipment, office equipment and supplies (collectively, the **"Equipment"**);

d.      all accounts receivable, promissory notes, payment intangibles, chattel paper, instruments and other rights of Defendants to the payment of money (collectively, the **"Accounts"**);

e.      all deposit accounts of Defendants (collectively, the **"Deposit Accounts"**), including, without limitation, all checking accounts, savings accounts, payroll  accounts, payroll tax accounts, petty cash accounts, and escrow accounts;

f.      all business records of Defendants, in whatever form or media maintained (collectively, the **"Records"**), including, but not limited to, all documents evidencing ownership of any Receivership Assets (including bills of sale and certificates of title), books of accounts, financial statements, balance sheets, ledgers, expense statements, logs (including aircraft flight logs), aircraft maintenance and servicing records, journals, reports, and other

documents relating to the past or future use, operation or maintenance of any Receivership Assets;

g.      all of Defendants' investment property, including, without limitation, stocks, bonds, and other securities;

h.      all insurance policies;

i.      all of Defendants' permits, licenses, registrations and certificates (including, without limitation, certificates of registration and re-registration relating to any aircraft) that were issued by governmental authorities or are necessary for the ownership or use of any of the Receivership Assets or the operation of any of the business of Defendants, and the Receiver shall be entitled to operate and to all of the other benefits and privileges arising under all of such permits, licenses, registrations and certificates;

j.      all of Defendants' general intangibles, customer lists, flight routes, landing rights, and rights under contracts;

k.      all causes of action, claims, rights in respect of pending or potential litigation and arbitration proceedings, and judgments owned by or in favor of any Defendant;

l.     all patents, trademarks, copyrights and other intellectual property of Defendants;

m.    all of Defendants' rent deposits, security deposits and other refundable deposits of money or other property, as well as all of each Defendant's rights to receive rent and storage fees and claims against others for unpaid rent or storage fees;

n.     all tax refund claims of Defendants, whether now in existence or hereafter arising; and

o.     all rents, income, monies, fees, revenues, proceeds, and profits now existing or hereafter generated from the collection, sale or other disposition of any of the Collateral (collectively, the "**Revenues**").

4.     Except as otherwise expressly restricted in this Order, the Receiver shall have and possess all powers, privileges and prerogatives ordinarily provided to receivers under law.  In addition, and without limiting the generality of the foregoing, but subject to paragraph 5 below, the Receiver is hereby authorized and empowered to:

a.     take immediate possession of, hold and secure all Receivership Assets;

b.     manage, control, operate and maintain the Receivership Estate;

c.     receive, collect, sue for, settle or compromise all Accounts, Revenues and other Receivership Assets;

d.     conduct all aspects of any business operations of Defendants, including, without limitation, continuation or termination of any service or employment arrangement or contract (including, without limitation, any and all shareholder, officer and severance agreements and contracts to which any Defendant is a party), and deliver such notices as the Receiver elects in his discretion relating to the conduct of such operations (including, without limitation, notices to employees of Defendants), with any disputes arising in connection therewith to be subject to the jurisdiction of this Court;

e.     make such ordinary and necessary payments, distributions, and disbursements as the Receiver deems advisable or proper for the marshaling, maintenance or preservation of the Receivership Assets;

f.     negotiate with any creditors and contract counterparties of Defendants for the purpose of compromising or settling any claim, including, without limitation, the surrender of assets to secured creditors;

g.     renew, cancel, terminate, or otherwise adjust any pending lease agreements to which Defendants are a party;

h.   institute, defend, compromise or adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as the Receiver in his discretion may deem to be advisable for the protection and administration of the Receivership Estate;

i.   institute actions, suits or other proceedings to obtain possession or custody of or control over any Receivership Assets, to pursue causes of action held by Defendants, and to collect any amounts owed to Defendants, including, but not limited to, accounts receivable, whether any such suits or proceedings are instituted in this Court or any other court or tribunal having competent jurisdiction;

j.   execute any necessary documents to allow the Receiver to take possession of and control of, and to draw checks on, any Deposit Accounts and to open bank accounts or other depository accounts, in the name of the Receiver on behalf of the Receivership Estate, provided that the Receiver shall provide Plaintiff with at least five (5) business days prior notice before opening any new bank or other depository account;

k.   prepare tax returns and related documents regarding the assets and operation of the Receivership Estate;

l.    file such reports and documents with federal, state and local officials as are required or are deemed by the Receiver to be necessary or appropriate in connection with the operation of Defendants' businesses;

m.    following at least five (5) business days' prior notice to Defendants, abandon any Receivership Assets (other than the Collateral, except as hereinafter provided) that, in the exercise of the Receiver's business judgment, are burdensome to the Receivership Estate;

n.    engage attorneys, accountants, appraisers, brokers, auctioneers, environmental experts, and other consultants and experts (collectively, the **"Professionals"**), on terms acceptable to Plaintiff, to assist the Receiver in the performance and discharge of his rights, powers, and duties hereunder and pay such Professionals reasonable retainers and their fees and expenses as such become due and payable; provided, however, that prior to any such payment by the Receiver to a Professional, the Receiver shall provide copies of the Professional's invoices to Plaintiff, who shall have a period of ten (10) business days after receipt of an invoice within which to send a written objection to payment to the Receiver, and if an objection is timely made by Plaintiff, the fees and expenses that are subject to the objection shall not be

paid except upon the subsequent written consent of Plaintiff or further order of this Court;

o.      subject only to the requirements and limitations in this Order, sell, lease or otherwise dispose of any of the Receivership Assets in or outside of the ordinary course of business, as a going concern or as part of an orderly liquidation, or in such public auctions or private sales as the Receiver may deem appropriate; and execute and deliver such bills of sale and other related documents in order to transfer all of Defendants' right, title and interest in and to any of the Receivership Estate to any purchaser thereof;

p.      pay from the Revenues (to the extent agreed by Plaintiff) or Protective Advances (defined below) the expenses of the Receivership Estate, including, without limitation, expenses for rent, utilities (gas, electric and water), supplies, wages and salaries, taxes (payroll, sales and personal property ad valorem) and ordinary and necessary repairs and maintenance to any of the Receivership Estate;

q.      deal with all existing and prospective subcontractors, vendors, suppliers, distributors, customers, licensors, licensees, landlords, tenants and subtenants of Defendants, including, without limitation, by way of

negotiating and executing leases, licenses, and other agreements and any amendments, renewals, extensions, modifications, or waivers of any leases, licenses, or other agreements between any Defendant and any existing or prospective subcontractors, vendors, suppliers, distributors, customers, licensors, licensees, landlords, tenants and subtenants of Defendants, with any disputes related to such dealings to be subject to the jurisdiction of the Court;

     r.    receive, open, read, and respond to all mail addressed to Defendants; provided that if the Receiver receives and reviews communications to any Defendant that are marked confidential, attorney-client privileged or similarly restricted, he shall maintain the confidentiality of such communications and neither his receipt nor his review of any such communications shall be deemed a waiver of any attorney-client privilege or similar protection that otherwise applies;

     s.    provide a written statement each month (for the prior month) of cash receipts and cash disbursements to Defendants and Plaintiff as well as any other reports and budgets reasonably requested by Plaintiff or required by the Court;

     t.    request and receive from Defendants' outside accountants and

auditors (collectively, the "**Auditors**") all records and information relating to Defendants' financial performance and condition in 2011, 2012 and 2013, for the purpose of, among other things, filing amended tax returns for Defendants and seeking any tax refund to which Defendants may be entitled (and such Auditors are hereby authorized and directed to turn over all such records and information to the Receiver);

u.     communicate and negotiate with the Federal Aviation Administration or any other regulatory or other authority regarding the operation of Defendants' businesses or the issuance or renewal of any permits, licenses, certificates or registrations in connection therewith; and

v.     take such other action as may be approved by this Court following prior notice to Plaintiff and Defendants.

In addition to the powers and instructions set forth hereinabove, the Receiver shall have all of the powers of a receiver that are authorized by law and all other powers necessary or proper to preserve and liquidate the Receivership Estate, including, without limitation, the Collateral, and to perform obligations and exercise rights and remedies under existing agreements between or among Defendants and any third parties.

5.     Notwithstanding anything to the contrary in this Order, the Receiver shall not be authorized to sell, lease, license, encumber, collect, compromise or otherwise dispose of, or use the proceeds of, any part of the Collateral without the prior express consent of Plaintiff, which consent may be given or withheld in Plaintiff's sole and absolute discretion and may, if so elected by Plaintiff, be conditioned upon Plaintiff's agreement as to the timing, method, manner and terms of any sale, lease, encumbrance, compromise or other disposition of any Collateral; and the Receiver shall in all events promptly account for and turn over to Plaintiff, for application to the Obligations, all cash and non-cash proceeds received in connection with any sale, lease, collection or other disposition of any Collateral.

6.     The Receiver shall be empowered, but is not required, to file on behalf of any Defendant a voluntary petition for relief under any chapter of Title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the **"Bankruptcy Code"**).  In the event that the Receiver files a voluntary petition under Chapter 11 of the Bankruptcy Code (each a **"Chapter 11 Case"**) for any Defendant, the Receiver shall have the sole and exclusive power and authority to manage and direct the business and financial affairs of such Defendant in connection with the Chapter 11 Case and any proceedings arising under or related thereto and such Defendant, under the management and direction of Receiver, shall be deemed a debtor-in-

possession under Chapter 11 of the Bankruptcy Code and may prosecute and defend such adversary proceedings and other matters as may be permitted under the Bankruptcy Code or applicable law. Without further order of this Court, no officer, director, employee, shareholder, agent or other person, other than the Receiver, shall be authorized to seek such relief under the Bankruptcy Code on behalf of any Defendant.

7.     Except with respect to lockboxes and other payment addresses in the control of Plaintiff to which account debtors of Defendants make payments in respect of Accounts, the Receiver is hereby authorized to notify the United States Postal Service to forward any mail addressed to Defendants to any Post Office box or other mail depository. Further, the Receiver is authorized to open and inspect all such mail, to determine the location or identity of assets or the existence and amount of claims.

8.     Subject to the rights and liens of Plaintiff as set forth in this Order, the Receiver may sell any or all of the Receivership Assets, including, without limitation, any of the Collateral (with the consent of Plaintiff) by one or more public or private sales, as determined by the Receiver in the exercise of his sound business judgment on such terms and conditions as the Receiver determines to be in the best interests of the Receivership Estate, without the necessity of the

Receiver having obtained any appraisal of any of the Receivership Assets that are to be the subject of a sale.  Without limiting the generality of the foregoing, to the extent that the Receiver elects to sell any of the Receivership Assets by one or more public sales as provided in 28 U.S.C. §§ 2001 and 2004, the Receiver, in the exercise of his discretion and business judgment, may determine the terms, conditions and procedures for the conduct of any such public sale, including, without limitation, (i) identification of the Receivership Assets to be sold, (ii) the requirements that any person or entity must satisfy to participate in the auction, and (iii) the time, date, and manner of any such auction sale, <u>provided</u> that no auction shall be conducted sooner than ten (10) business days after the date on which this Order is entered.

9.    For any proposed public sale of the Receivership Assets, the Receiver shall file a notice (the **"Sale Notice"**) with the Court specifying the terms, conditions and procedures for such proposed public sale.  The Receiver promptly shall serve the Sale Notice on each of the following persons or their counsel (**"Interested Parties"**): (i) Plaintiff and Defendants; (ii) all persons who, based on a reasonable search of public records of liens and security interests, may have or assert an interest in any of the Auctioned Property; (iii) each person who has in writing to Defendants or the Receiver expressed an interest in purchasing the

Auctioned Property and provided in writing a name and address for such party in interest; and (iv) any other person who has advised the Receiver in writing that such person is a creditor of Defendants and has provided in writing therewith a name and address for such person.

10.     If an Interested Party wishes to object to a Sale Notice as being inadequate to give fair notice of the terms and conditions of a proposed public sale, such Interested Party within any deadlines identified in a Sale Notice shall file its written objection in this case, shall state therein, with specificity, its grounds for objecting to such Sale Notice, and shall serve such objection on the Receiver, Plaintiff, and Defendants.  The Court shall schedule a hearing to hear and resolve any timely objections.  At such hearing, the objecting party shall bear the burden of demonstrating that such Sale Notice fails to provide adequate notice of the terms and conditions of the proposed sale and should be modified.  Notwithstanding the filing of any objection to the Sale Notice in accordance with this paragraph, until the Court enters an Order directing otherwise, the Receiver shall be entitled to conduct the proposed public sale in accordance with the Sale Notice.

11.     With respect to a proposed sale of any Collateral, Plaintiff shall have the right to veto any sale on terms that are not satisfactory to it, in which event the Receiver shall have the option to abandon such Collateral from the Receivership

Estate to Plaintiff for foreclosure or other realization by Plaintiff in accordance with the Loan Documents and applicable law, and the Receiver, for itself and Defendants, shall be deemed to have waived any notices of proposed disposition by Plaintiff of any of the Collateral otherwise required by applicable law.

12.     The Receiver shall be authorized to request and receive from Plaintiff from time to time advances of funds (collectively, **"Protective Advances"**) that are necessary for the Receiver's operation of Defendants' businesses or the management, maintenance, marketing, sale, safeguarding, insurance, operation or repair of the Collateral or other Receivership Assets, including, without limitation, payroll and payroll taxes, premiums for insurance and amounts needed to make necessary and essential repairs to the Facilities, all of which Protective Advances by Plaintiff shall be deemed Revolver Loans under (and as defined in) the Loan Agreement to protect and preserve the Collateral, shall form a part of the Obligations, and shall be secured by all of the liens and security interests granted or conveyed by Defendants to or in favor of Plaintiff. All Protective Advances may be made by Plaintiff at such times and in such amounts as Plaintiff may elect in its sole and absolute discretion. If Plaintiff elects to discontinue making Protective Advances, Plaintiff shall provide at least five (5) business days' prior written notice of such election to the Receiver and to the Court (a **"Funding**

Termination Notice"), and, if such notice is given, Plaintiff shall fund one final Protective Advance to the Receiver in an amount sufficient to permit the Receiver to pay all unpaid wages, salary, payroll and payroll taxes attributable to time actually worked (excluding any severance, bonus or other extraordinary items), and sales, use, excise taxes, and any other government imposed tax, penalty, fine, obligation, or assessment that constitutes a lien on Receivership Assets senior in priority to the liens and security interests of Plaintiff, in each case to the extent accrued through and including the date that Plaintiff delivers such notice of termination of funding to the Receiver. The Receiver shall provide prompt written notice to Plaintiff of any payroll, payroll taxes, sales, use and excise taxes owed by the Receivership Estate that have not been (prior to entry of this Order) or are not (after entry of this Order) paid as and when due. If Plaintiff elects to send a Funding Termination Notice, then Plaintiff shall file such notice with the Court, together with a motion seeking to terminate the receivership established pursuant to this Order; and at the hearing on any such motion, the Court may consider and determine the extent (if any) to which proceeds of Collateral or Protective Advances from Plaintiff may be required to be made available to the Receiver in order to permit the Receiver to pay (i) unpaid actual, reasonable expenses that were approved and incurred by the Receiver after his appointment through the effective

date of the Funding Termination Notice and (ii) a reasonable estimate of fees and expenses of the Receiver and his Professionals for services to be rendered after the effective date of the Funding Termination Notice in connection with winding up the receivership.

13.   Plaintiff shall be authorized, at any time or times, to enter upon the Facilities (or any other location at which the Receiver maintains any of the Receivership Assets) for the purpose of inspecting the Collateral or any other Receivership Assets, including all Records, Inventory or Equipment; conferring with officers, employees, or agents of the Receiver; and reviewing and making copies of any and all of the Records and any other documents at any time in the possession, custody or control of the Receiver.  The Receiver shall periodically, at such intervals as Plaintiff and the Receiver shall mutually agree upon (but no less frequently than once monthly), provide to Plaintiff and Defendants reports of the Receiver's operations, cash receipts, disbursements and maintenance of the Receivership Estate.  In no event shall Plaintiff, by virtue of its exercising any right, power or privilege hereunder, be deemed to be in possession or control of any of the Receivership Estate, or to have asserted any supervisory control or decision-making authority with respect to the management, operation, protection or maintenance of any Receivership Assets, and Plaintiff shall not be deemed to have

assumed any obligation under Defendants' agreements with any third parties and shall not be liable for the use, maintenance, repair, or operation of any of the Receivership Estate.   All officers, attorneys and authorized representatives of Defendants shall be entitled to review, inspect and copy any of the Records during normal business hours and at their own expense.

14.    Each Defendant and each of its officers, directors, agents, attorneys and employees, all other persons acting at the direction of any Defendant, and each other person or entity receiving notice of this Order by service or otherwise (but specifically excluding Plaintiff), are hereby ordered immediately to (i) turn over to the Receiver possession of all of the Receivership Assets, including, but not limited to, the Collateral and the Records; (ii) pay over to the Receiver all cash and all funds and deposits in any Deposit Accounts or investments of Defendants, except for funds required to pay checks for expenses of Defendants that have been issued on or before the date of entry of this Order but have not yet been presented for payment; (iii) turn over to the Receiver all keys and entry cards to all buildings, safes, deposit boxes, or other safeguarded places in, on or about the Facilities and all other tangible or intangible items of Receivership Assets; and (iv) cooperate with the Receiver in identifying and locating Receivership Assets, transitioning the operations of any Receivership Assets to the Receiver, and identifying and

investigating any causes of action of any Defendant. Notwithstanding the foreground, all proceeds of Collateral shall be remitted by the Receiver (or any other person or entity in possession thereof) to Plaintiff for application to the Obligations.

15. The Receiver may, in his discretion and for the purpose of maintaining going-concern value of any Receivership Assets, permit officers or employees of Defendants to collect, sell, possess, manage, protect, market and otherwise deal with some or all of the Receivership Assets on such terms, and subject to such limitations and conditions, as the Receiver deems appropriate, but in all events subject to the prior written consent of Plaintiff and the other provisions of this Order requiring a turnover to Plaintiff, for application to the Obligations, of proceeds of the Collateral.

16. During the pendency of this Receivership, absent express permission of this Court, all actions by any creditors, lessors, landlords, taxing authorities and other persons and entities seeking money damages, dispossession of Receivership Assets or other relief from any Defendant or the Receivership Estate and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are, until further order of this Court, hereby stayed.

Further, except for Plaintiff, all persons and entities who have or receive notice of this Order, including (i) Defendants (and all officers, directors, employees and agents of Defendants), (ii) all creditors of Defendants, and (iii) all persons or entities acting at the direction or on behalf of any of the persons described in clauses (i) or (ii), including, without limitation, sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are hereby **RESTRAINED AND ENJOINED** from (a) destroying, concealing, using, collecting, taking possession of, transferring, asserting dominion or control over, repossessing, seizing, attaching, garnishing, executing upon, seeking to impose a judicial lien upon any Receivership Assets, (b) otherwise interfering with the possession, custody, control, use, or management by the Receiver of any Receivership Assets or with the Receiver's exercise of powers or discharge of duties under this Order, (c) altering any Records, (d) cancelling, terminating or limiting any insurance coverage, permits, registrations, certificates, licenses or contracts of any Defendant, or (e) filing or prosecuting any actions or proceedings that involve the Receiver or that affect any Receivership Assets, except to the extent authorized by the Receiver or to the extent that any party to such action or proceeding may be required to answer or reply to any pending complaint, motion or other pleading in order to avoid default.

17.    The Receiver is authorized to file, record or register this Order with appropriate government offices and courts and to serve this Order on any person or entity whom the Receiver reasonably believes to be in custody or control of funds or other assets properly belonging to the Receivership Estate.

18.    If the Receiver determines that the aggregate amount of Revenues and Protective Advances available to the Receiver are insufficient to pay the reasonable and necessary expenses of maintaining, preserving, and operating the Facilities in compliance with applicable law, then the Receiver may, on not less than ten (10) business days written notice to Plaintiff and Defendants, file with the Court a resignation and termination of the Receiver's further responsibilities to serve as receiver hereunder, whereupon, subject to a surrender of all of the Collateral to Plaintiff and the filing of a final report regarding the receivership with the Court, the Receiver shall be discharged.  In connection with any such surrender of Collateral to Plaintiff, the Receiver, for himself, on behalf of the Receivership Estate and on behalf of Defendants, shall be deemed to have waived any notices otherwise required to be given by Plaintiff in connection with any sale or other disposition of any of the Collateral, including, without limitation, any notices otherwise required under the Uniform Commercial Code.

19.     The Receiver is authorized to communicate with all persons as he deems appropriate to inform them of the status of this matter and the Receivership Estate. In connection with any final report, accounting and discharge of the Receiver, the Receiver shall seek and obtain final approval from the Court of the professional fees and expenses of the Receiver, his firm and his counsel.

20.     Upon the request of the Receiver, the United States Marshal's Office, in any judicial district, is hereby authorized to assist the Receiver in carrying out his duties to take possession, custody or control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

21.     Notwithstanding anything to the contrary in this Order, Plaintiff is hereby authorized (but not required) to take all actions it deems necessary or appropriate to realize upon any Collateral, including, without limitation, collection of any Accounts, foreclosure of its liens upon any or all of the Collateral or exercise any power of sale granted in any of the Loan Documents, and apply the proceeds thereof to the payment of the Obligations. Except as otherwise expressly agreed by Plaintiff, the Receiver shall turn over all proceeds of the Collateral to Plaintiff for application to the Obligations. Upon any foreclosure by Plaintiff, the Receiver shall cooperate with the Plaintiff and the party purchasing any Collateral at foreclosure by relinquishing possession of such Collateral and taking any other

- 30 -

actions that may be necessary or desirable in connection with a foreclosure by Plaintiff.

22.     The Clerk of the Court is authorized and directed to make certified copies of this Order, at the Receiver's request, for use by the Receiver.

23.     Except for an act of gross negligence or willful misconduct, the Receiver and all persons engaged by or employed by him shall not be liable for any loss or damage incurred by Defendants or any other person by reason of any act performed or omitted to be performed by them in connection with the discharge of their duties and responsibilities in this matter.

24.     Defendants, Plaintiff and any other person asserting a lien upon any assets in the Receivership Estate, may request, by written motion filed with the Court and with at least five (5) business days' notice to Plaintiff and Defendants, a status conference or any other appropriate relief as to the results of the Receiver's management and liquidation of the Receivership Estate, the necessity or appropriateness of continuing the receivership, or whether any of the terms and conditions of this Order should be amended or modified in any way.

25.     The Receiver shall be authorized to apply to this Court, with notice to Plaintiff and Defendants, for issuance of such other orders as may be necessary and appropriate in order to carry out the mandate of this Court.

- 31 -

26.     This Court shall retain jurisdiction of this matter for all purposes, including, without limitation, for the purpose of amending, interpreting and enforcing any of the provisions of this Order.

SO   ORDERED   at   _3:47_   o'clock   _p._.m.,   this _22nd_ day of January, 2014.


_William L Duffey_
HONORABLE WILLIAM S. DUFFEY, JR.
JUDGE,   UNITED   STATES   DISTRICT
COURT

<u>Prepared and Presented By</u>:

**PARKER, HUDSON, RAINER & DOBBS LLP**
Attorneys for Plaintiff

By: /s/ James S. Rankin, Jr.
     James S. Rankin, Jr.
     Georgia Bar No. 594620
     Joshua J. Lewis
     Georgia Bar No. 303211

1500 Marquis Two Tower
285 Peachtree Center Avenue NE
Atlanta, Georgia 30303
(404) 523-5300 (phone)
(404) 522-8409 (fax)
jrankin@phrd.com (e-mail)
jlewis@phrd.com (e-mail)

<u>No objection to entry</u>:

**SCROGGINS & WILLIAMSON, P.C.**
Attorneys for Defendants

By: /s/ J. Robert Williamson (by JSR w/express permission)
     J. Robert Williamson
     Georgia Bar No. 765214

1500 Candler Building
127 Peachtree Street NE
Atlanta, Georgia 30303
(404) 893-3880 (phone)
rwilliamson@swlawfirm.com (e-mail)

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

1. U.S. District Court

Northern District of Georgia

## Notice of Electronic Filing

The following transaction was entered on 1/22/2014 at 4:22 PM EST and filed on 1/22/2014

| | |
|---|---|
| Case Name: | Alostar Bank of Commerce v. Airnet Holdings, Inc. et al |
| Case Number: | 1:14-cv-00178-WSD |
| Filer: | |
| Document Number: | 5 |

Docket Text:
CONSENT ORDER APPOINTING RECEIVER AND ENJOINING DEFENDANTS AND OTHERS granting [2] Motion to Appoint Receiver and Motion for Preliminary Injunction. Kevin O'Halloran appointed as receiver for Defendants and for all of the Receivership Assets. Signed by Judge William S. Duffey, Jr on 1/22/2014. (anc)

1:14-cv-00178-WSD Notice has been electronically mailed to:

J. Robert Williamson rwilliamson@swlawfirm.com, aray@swlawfirm.com, ccaskey@swlawfirm.com, centralstation@swlawfirm.com, hkepner@swlawfirm.com, jminock@swlawfirm.com, jsanders@swlawfirm.com

James S. Rankin , Jr jrankin@phrd.com

Joshua John Lewis jlewis@phrd.com

1:14-cv-00178-WSD Notice has been delivered by other means to:

The following document(s) are associated with this transaction:

Document description:Main Document
Original filename:n/a
Electronic document Stamp:

[STAMP dcecfStamp_ID=1060868753 [Date=1/22/2014] [FileNumber=6211959-0
] [534b584881711cc13a5f4b67423f4db52d96f765d2d4805919d55f2b35dfb3c43bb
62340a0e805168272ae7f182816f78e91180c2fe35b3bc1c5b2d4d81847b8]]